1  Michael J. Nader, SBN 200425
   Michael.Nader@ogletree.com
2  George J. Theofanis, SBN 324037
   george.theofanis@ogletree.com
3  OGLETREE, DEAKINS, NASH, SMOAK &
   STEWART, P.C.
4  400 Capitol Mall, Suite 2800
   Sacramento, CA  95814
5  Telephone:    916-840-3150
   Facsimile:    916-840-3159
6
7  Attorneys for Defendant KEYBANK NATIONAL ASSOCIATION

8              **UNITED STATES DISTRICT COURT**

9              **NORTHERN DISTRICT OF CALIFORNIA**

10

11 | PORSHA McDANIELS, on behalf of herself and aggrieved employees, | Case No. _____ |
|---|---|
| Plaintiff, | **DEFENDANT KEYBANK NATIONAL ASSOCIATION'S NOTICE OF REMOVAL OF CIVIL ACTION TO FEDERAL COURT** |
| vs. | |
| KEYBANK NATIONAL ASSOCIATION, a domestic corporation; and DOES 1 through 50, inclusive | [Filed concurrently with Civil Cover Sheet; Certification of Interested Parties and Disclosure Statement; and Declarations of Aishwarya Kanthappan and George Theofanis in Support of Removal] |
| Defendants. | [Contra Costa Superior Court Case No. C24-01871] |
| | Action Filed:    7/23/2024<br>Trial Date:       TBD |

**TO THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF CALIFORNIA AND TO PLAINTIFF PORSHA McDANIELS AND HER ATTORNEYS OF RECORD:**

PLEASE TAKE NOTICE THAT Defendant KEYBANK NATIONAL ASSOCIATION ("Defendant" or "KeyBank"), by and through the undersigned counsel, hereby removes the above-entitled action from the Superior Court of the State of California for the County of Contra Costa to the United States District Court for the Northern District of California pursuant to 28 U.S.C. Sections 1332, 1441, and 1446.[1] In support of such removal, KeyBank states as follows:

1. KeyBank removes this action on the grounds that: (a) there is complete diversity of citizenship between Plaintiff Porsha McDaniels ("Plaintiff"), a citizen of the State of California, and KeyBank, a citizen of the State of Ohio; and (b) the amount in controversy exceeds the jurisdictional minimum of $75,000 set forth in Section 1332(a).

I.    **THE STATE COURT ACTION**

2. On July 17, 2024, Plaintiff, by and through her attorney, filed a civil action in the Superior Court of the State of California for the County of Contra Costa, entitled: *Porsha McDaniels, on behalf of herself and aggrieved employees, v. KeyBank National Association, a domestic corporation; and DOES 1 through 50, inclusive, Defendant* (Case No. C24-01871). (Declaration of George J. Theofanis ("Theofanis Decl.") ¶2 **Ex. A** [PAGA Compl.].)

3. In the PAGA Complaint, Plaintiff seeks, among other things, damages for claims that KeyBank failed to pay her minimum, overtime, and double time wages, failed to provide her with compliant meal and rest breaks, failed to provide her with paid sick leave, failed to reimburse Plaintiff's business-related expenses; failed to provide Plaintiff with accurate written wage statements; failed to keep accurate records of the Plaintiff; failed to timely pay Plaintiff's current wages; failed to pay Plaintiff's wages as required by contract or statute, failed to pay Plaintiff's accrued vacation; and failed to pay Plaintiff's final wages. (PAGA Compl. ¶¶ 1, 13, 15, 22, 32-35, 45-51, 51, 58-59, 64).

---

[1] The foregoing facts were true at the time the Complaint in this matter was filed and remain true as of the date of the filing of this notice of removal, as is more fully set forth below.

4.   On July 26, 2024, KeyBank's registered agent for service of process was served with copies of the Summons, Complaint, Civil Case Cover Sheet, and court Order, for the state court action. (Theofanis Decl. ¶3 **Ex. B** [Docs. Served on Def.])

5.   On August 23, 2024, KeyBank filed and served its Answer to Plaintiff's Complaint. (Theofanis Decl. ¶4 **Ex. C** [Def.'s Answer.])

6.   As set out more fully below, this action is one over which this Court has original jurisdiction and is one that may be removed to this Court under 28 United States Code §§ 1332(a), 1441(a) and 1446, because this matter is between citizens of different states and the amount in controversy based on Plaintiff's claims alone is greater than $75,000, as set forth below.

## II.   **REMOVAL IS TIMELY**

7.   The time to remove under 28 U.S.C. section 1446(b) does not begin to run until receipt by the Defendant, through service or otherwise, of a pleading, motion, order or other paper from which it may first be ascertained that the case is one which is or has become removable. *Harris v. Bankers Life & Cas. Co.*, 425 F.3d 689, 694 (9th Cir. 2005). Defendant is not obligated to investigate or develop additional facts as to removability upon receipt of the Complaint. *Id*. ("[N]otice of removability...is determined through examination of the four corners of the applicable pleadings, *not* through subjective knowledge or a duty to make further inquiry" by Defendant.).

8.   The Ninth Circuit has repeatedly upheld the *Harris* decision in subsequent cases. In *Kuxhausen v. BMW Fin. Servs. NA LLC*, 707 F.3d 1136 (9th Cir. 2013), the Ninth Circuit emphasized that defendants are not "saddl[ed] with the burden of investigating jurisdictional facts" as to removability. In *Roth v. CHA Hollywood Medical Center, L.P.*, 720 F.3d 1121, 1125 (9th Cir. 2013), the Court explained that when defendants *do* conduct such an investigation, 28 U.S.C. §§ 1441 and 1446, "read together, permit a defendant to remove outside the two thirty-day periods on the basis of its own information."

9.   Here, the four corners of the PAGA Complaint do not provide readily ascertainable grounds for removal. The PAGA Complaint does not allege sufficient facts to calculate the amount

in controversy with reasonable certainty as to the individually named plaintiff or as to the putative PAGA representative group.

10. The PAGA Complaint does not provide an estimate as to the number of PAGA members, the frequency of alleged violations of the California Labor Code, nor estimates as to Plaintiff's own experiences. *See*, PAGA Complaint, *passim.* Thus, the time to remove has not yet begun and Defendant may remove based upon its own investigation. *Harris, supra,* 425 F.3d at 694.

11. Accordingly, Defendant's removal is timely.

### III. PLAINTIFF'S COMPLAINT IS REMOVABLE UNDER DIVERSITY JURSIDICTION

12. The basis for removal is that this Court has original jurisdiction of this action under 28 U.S.C. §1332 and it is one which may be removed to this Court by KeyBank, pursuant to 28 U.S.C. §1441(b), in that it is a civil action wherein the amount in controversy (**"AIC"**) exceeds $75,000, exclusive of interests and costs, and is a civil action between citizens of different states such that complete diversity exists. Removal based on Plaintiff's individual claims is appropriate so long as the amount in controversy of Plaintiff's individual claims "exceeds the sum or value of $75,000." *Patel v. Nike Retail Services, Inc.*, 58 F. Supp. 3d 1032 (N.D. Cal. 2014) (J. Tigar).

13. Under 28 U.S.C. section 1446(a), a defendant seeking to remove a case to federal court need only file a "notice of removal 'containing a short and plain statement of the grounds for removal.'" *Dart Cherokee Basin Operating Co., LLC v. Owens,* 135 S. Ct. 547, 553 (2014). This language "tracks the general pleading requirement stated in Rule 8(a) of the Federal Rules of Civil Procedure" and that "[a] statement short and plain need not contain evidentiary submissions." *Id.* at 551, 553.

14. Both of the requirements for subject matter jurisdiction based on diversity jurisdiction are met here and this case is removable to this Court because: (a) there is complete diversity of the parties; Plaintiff is a citizen of California, and KeyBank is a citizen of Ohio; and (b) the amount in controversy exceeds $75,000.

**A.      The Citizenship of The Parties is Diverse.**

      **1.      Plaintiff is a Citizen of California.**

15.     For diversity purposes, an individual is a "citizen" of the state in which she is domiciled. *Kantor v. Wellesley Galleries, Ltd.*, 704 F.2d 1088, 1090 (9th Cir. 1983). An individual's domicile is the place where she resides with the intention to remain or to which she intends to return. *Kanter v. Warner-Lambert Co.*, 265 F.3d 853, 857 (9th Cir. 2001).

16.     As set forth in the PAGA Complaint, Plaintiff "is, and at all relevant times mentioned herein, an individual residing in the State of California." (PAGA Compl. ¶ 6.)

17.     Plaintiff also reported to KeyBank that she is a California resident during her employment, including, among other actions, providing a California address, indicating that she is a California resident, and completing California tax withholding forms. ECF[2] 5, ¶4.

18.     Accordingly, Plaintiff is domiciled in and for purposes of diversity jurisdiction is a citizen of the State of California.

      **2.      KeyBank is Not a Citizen of California.**

19.     National banks are "deemed citizens of the States in which they are respectively located." (28 USC § 1348.)  A bank is "located" only where it has its main office, not where it maintains branch offices. *Wachovia Bank v. Schmidt*, 546 US 303, 306-307(2006); *Rouse v. Wachovia Mortg., FSB*, 747 F3d 707, 709 (9th Cir. 2014) (holding that a national bank is only a citizen of the state of its main office, even if its principal place of business is in a different state).

20.     Here, KeyBank was, at the time of the filing of this lawsuit, and still is, a national bank headquartered in Cleveland, Ohio, with its main office and principal place of business in the State of Ohio.  ECF 4, ¶4. The majority of KeyBank's executives and administrative functions, including operations management, human resources, finance, information technology, business operations, and its legal and marketing functions, are based out of its headquarters in Cleveland, Ohio.  (*Id.*) Therefore, at all material times, KeyBank has been a citizen of the State of Ohio.

---

[2] All references to ECF refer to the Court's Docket in Plaintiff's related Class Action in Case No. 4:24-cv-03691-JST, filed on June 20, 2024.

21. The citizenship of fictitiously named "Doe" defendants is disregarded for purposes of removal. See 28 U.S.C. § 1441(b)(1); *see also Newcombe v. Adolf Coors Co.*, 157 F.3d 686, 690 (9th Cir. 1998) (holding that, in determining whether diversity of citizenship exists, only the named defendants are considered).

22. Thus, complete diversity exists between Plaintiff and KeyBank.

B. **The Amount In Controversy Exceeds $75,000.**

23. "[A]s specified in § 1446(a), a defendant's notice of removal need include only a plausible allegation that the amount in controversy exceeds the jurisdictional threshold." *Dart,* 135 S. Ct. at 554. Legal certainty of the amount in controversy is not required. *See Rodriguez v. AT&T Mobility Servs. LLC,* 728 F.3d 975, 981 (9th Cir. Aug. 27, 2013) ("[a] defendant seeking removal . . . must demonstrate, by a preponderance of evidence, that the aggregate amount in controversy exceeds the jurisdictional minimum").[3]

24. To meet this relatively low burden regarding the amount in controversy, a defendant may rely on plaintiff's allegations, which are *assumed to be true*, and provide supplementary facts or numbers upon which the amount in controversy can reasonably be calculated. *Gaus v. Miles, Inc.,* 980 F.2d 564, 566 (9th Cir. 1992); *Rippee v. Bos. Mkt. Corp.,* 408 F. Supp. 2d 982, 986 (S.D. Cal. 2005) (allowing the use of "Defendant's own numbers" for "purposes of analyzing the amount in controversy"). In determining whether the jurisdictional minimum is met, the Court considers ***all recoverable damages***, statutory penalties, and attorney's fees. *Hunt v. Washington State Apple Advert. Comm'n*, 432 U.S. 333, 347–48 (1977); *Galt G/S v. JSS Scandinavia,* 142 F.3d 1150, 1155–56 (9th Cir. 1998).

25. Removal is proper if, from the allegations in the Complaint and the Notice of Removal, it is more likely than not that the value of Plaintiff's claims exceeds $75,000. *Sanchez v. Monumental Life Ins. Co.,* 102 F.3d 398, 404 (9th Cir. 1996); *Luckett v. Delta Airlines, Inc.,* 171 F.3d 295, 298 (5th Cir. 1999).

---

[3] KeyBank discusses the allegations in Plaintiff's Complaint solely for purposes of demonstrating that the amount in controversy, as pled, exceeds $75,000. By doing so, KeyBank in no way concedes that Plaintiff is entitled to damages in excess of the jurisdictional minimum, or to any damages at all.

26. KeyBank's notice of removal "need not contain evidentiary submissions." *See Dart Cherokee Basin Operating Co., LLC,* 574 U.S. at 84. In showing the amount in controversy, KeyBank "may rely on reasonable assumptions." *See Arias v. Residence Inn,* 936 F.3d 920, 922 (9th Cir. 2019). The amount in controversy is "simply an estimate of the total amount in dispute . . . . [and] [i]n that sense, the amount in controversy reflects the maximum recovery [a] plaintiff could reasonably recover" on a complaint at the time of removal. *Id.* at 927. Moreover, "[a]n assertion that the amount in controversy exceeds the jurisdictional threshold is not defeated merely because it is equally possible that the damages might be less than the requisite amount." *Id.* (quotation marks omitted).

27. It is permissible for KeyBank, when the PAGA Complaint does not provide clear indications of the amount in controversy, to rely on employee data and reasonably assumed violation rates based upon the Complaint when determining the amount in controversy. *See Arias,* 936 F.3d at 927. KeyBank may rely on "a chain of reasoning that includes assumptions." *Ibarra v. Manheim Invs., Inc.,* 775 F.3d at 1199. KeyBank does not need to "provide evidence proving the assumptions correct." *Arias,* 936 F.3d at 927. Instead, "assumptions made part of the defendant's chain of reasoning need not be proven; they instead must only have 'some reasonable ground underlying them.'" *Id.* (citation omitted).

28. While KeyBank denies any and all liability to Plaintiff, based on a conservative good faith estimate of the value of the alleged damages in this action, the amount in controversy in this case exceeds $75,000, exclusive of interest and costs.

29. In the PAGA Complaint, Plaintiff seeks, among other things, damages for claims that KeyBank failed to pay her minimum, overtime, and double time wages, failed to provide her with compliant meal and rest breaks, failed to provide her with paid sick leave, failed to reimburse Plaintiff's business-related expenses; failed to provide Plaintiff with accurate written wage statements; failed to keep accurate records of the Plaintiff; failed to timely pay Plaintiff's current wages; failed to pay Plaintiff's wages as required by contract or statute, failed to pay Plaintiff's

///

///

accrued vacation; and failed to pay Plaintiff's final wages. (PAGA Compl. ¶¶ 1, 13, 15, 22, 32-35, 45-51, 51, 58-59, 64).[4]

30. The actionable period of this PAGA Complaint is one year and sixty-six days prior to the date that the PAGA Complaint was filed on July 17, 2024. *Clark v. QG Printing II, LLC*, 2023 WL 2843989 at *11 (E.D. CA 2023). Thus, the actionable period here is from **May 12, 2023 until resolution** (the Relevant PAGA Period or "**RPP**").

31. According to KeyBank's business records, Plaintiff has worked for KeyBank from **May 31, 2022, to present,** as an hourly, non-exempt, full time employee, and remains an employee with KeyBank. ECF 7, ¶7.

32. During the RPP, Plaintiff has worked at least **23 pay periods** for KeyBank. (Declaration of Aishwarya Kanthappan ("Kanthappan Decl.") ¶10.)

33. 100% of the PAGA penalties sought are properly included in the AIC. See, e.g., *Schiller v. David's Bridal, Inc.*, 2010 WL 2793650 at *8. (E.D. Cal. July 14, 2010); *Patel v Nike Retail Services, Inc., supra*, 58 F. Supp. 3d at 1048.

### 1. **Plaintiff's minimum wage claim places an amount in controversy of at Least $10,100.**

34. Plaintiff alleges that KeyBank "had a common policy and practice of systemically failing to pay Aggrieved Employees proper wages and overtime for all hours worked …" (PAGA Compl. ¶¶ 12, 13, 38, 39, 45). Plaintiff's LWDA letter further alleged that KeyBank "willfully refused" to pay minimum wages "with the intent to annoy, harass, oppress, hinder, delay, or defraud Aggrieved Employees." (Theofanis Decl. ¶7 Ex. E ["LWLDA Letter"], p. 4).

35. Plaintiff's allegations support the assumption that at least one minimum wage violation occurred during every payroll period that Plaintiff worked in the RPP. *See Vasquez v. Randstad US, L.P.*, No. 17-cv-04342-EMC, 2018 WL 327451, at *4 (N.D. Cal. Jan. 9, 2018)

---

[4] Although not all of Plaintiff's claims are considered in the amount in controversy, if Plaintiff or the court challenges federal court jurisdiction over this matter, KeyBank reserves the right to place such additional claims and amounts in controversy. For example, Plaintiff also alleges claims and seeks penalties pursuant to alleged violations of sections 212, 227.3 and 246 of the Labor Code, none of which was taken into account here because, even using *a fraction* of the civil penalties that Plaintiff seeks, the AIC clearly exceeds $75,000. Moreover, Plaintiff's LWDA letter seeks additional civil penalties under (for example, and this list is not exhaustive) section 558, and section 20 of the Wage Order, as well as default civil penalties for purported violations of sections 226(a), 226(e), 1174.5, 1182.12, 1185, 1194.2, 1199, etc.

(finding defendants' assumption of 2.5 hours per employee *per week* was reasonable for a minimum wage claim Minimum damages calculation where plaintiff alleged that defendants had a "policy and practice" of requiring off-the-clock work).

36. For this claim, Plaintiff's allegations require the following civil penalties to be included in the AIC: (PAGA Compl. ¶¶ 64(i) and (vii))

(a) civil penalties under section 1197.1 of $100 for the first pay period violation, and $250 for all subsequent pay period violations.[5]

(b) Default civil penalties under section 1194 of $100 for the first pay period violation, and $200 for all subsequent pay period violations.[6]

37. Thus, as explained in more detail in the declaration submitted by Defendant's data analyst, Plaintiff's minimum wage claim places an AIC of **$10,100.** (Kanthappan Decl. ¶11.).

### 2. Plaintiff's overtime claim places an amount in controversy of at least $6,750.

38. Plaintiff alleges that KeyBank "had a common policy and practice of systemically failing to pay Aggrieved Employees proper wages and overtime for all hours worked …" (PAGA Compl. ¶¶ 12, 13, 38, 39, 45).

39. Plaintiff's allegations support the assumption that at least one overtime violation occurred during every payroll period that Plaintiff worked in the RPP. *See Vasquez v. Randstad US, L.P.*, No. 17-cv-04342-EMC, 2018 WL 327451, at *4 (N.D. Cal. Jan. 9, 2018) (finding defendants' assumption of 2.5 hours per employee *per week* was reasonable for a minimum wage claim Minimum damages calculation where plaintiff alleged that defendants had a "policy and practice" of requiring off-the-clock work); *Wicker v. ASC Profiles LLC*, No. 2:19-CV-02443-TLN-KJN, 2021 WL 1187271, at *3 (E.D. Cal. Mar. 30, 2021) (approving estimate of one unpaid overtime hour, one miss meal break and one missed rest break per week, and 100 percent wage statement violation, based on "pattern and practice" violation despite allegation that limited violations to "but not all" putative class members); *see also Oda v. Gucci Am., Inc.*, No. 2:14-CV-07469-SVW (JPRx),

---

[5] $100 (1 pay period) + $250 (22 pay periods) = $5,600.
[6] $100 (1 pay period) + $200 (22 pay periods) = $4,500.

2015 WL 93335, at *5 (C.D. Cal. Jan. 7, 2015) ("because Plaintiffs include separate claims for both failure to pay regular wages and failure to pay overtime, [defendant] properly assumes at least one of each type of violation per week").

40. For this claim, Plaintiff's allegations require the following civil penalties to be included in the AIC: (PAGA Compl. ¶¶ 64(i) and (vi)).

    (a) default civil penalties under section 1198 of $100 for the first pay period violation, and $200 for all subsequent pay period violations.[7]

    (b) civil penalties under section 510 (pursuant to 558) of $50 for the first pay period violation, and $100 for all subsequent pay period violations.[8]

41. Thus, as explained in more detail in the declaration submitted by Defendant's data analyst, Plaintiff's overtime wage claim places an AIC of **$6,750**. (Kanthappan Decl. ¶12.).

### 3. Plaintiff's meal and rest break claims place an amount in controversy of at Least $6,750.

42. Plaintiff alleges that KeyBank failed to provide compliant meal and rest breaks, and failed to pay related premium wages, in violation of sections 226.7 and 512 of the Labor Code. (PAGA Compl. ¶¶ 58, 59, 64). Plaintiff's LWDA letter further underscores these allegations. (LWDA Letter, p. 10).

43. Plaintiff's allegations support the assumption that at least one meal break violation and one rest break violation occurred during every payroll period that Plaintiff worked in the RPP. *See, Sanchez v. Abbott Labs.*, No. 2:20-CV-01436-TLN-AC, 2021 WL 2679057, at *5 (E.D. Cal. Jun. 30, 2021) (approving estimate of two meal period premiums per week, two rest period premiums per week, one unpaid overtime hour per week, 100% violation rate for wage statements, based on the plaintiff's "pattern and practice" allegations, despite Plaintiff's reliance on "but not all" allegations);

44. For this claim, Plaintiff's allegations require the following civil penalties to be included in the AIC: (PAGA Compl. ¶¶ 64(i) and (vi))

---

[7] $100 (1 pay period) + $200 (22 pay periods) = $4,500.
[8] $50 (1 pay period) + $100 (22 pay periods) = $2,250.

        (a)    default civil penalties under section 226.7 of $100 for the first pay period violation, and $200 for all subsequent pay period violations.[9]

        (b)    civil penalties under section 512 (pursuant to 558) of $50 for the first pay period violation, and $100 for all subsequent pay period violations.[10]

45.    Thus, as explained in more detail in the declaration submitted by Defendant's data analyst, Plaintiff's meal and reset break claim places an AIC of **$6,750**. (Kanthappan Decl. ¶13.).

### 4. **Plaintiff's wage statement claim places an amount in controversy of at least $22,250.**

46.    Plaintiff alleges that Defendant simply failed to provide wage statements in paper format, which supports a 100% violation rate. (PAGA Compl. ¶ 21).

47.    For this claim, Plaintiff's allegations require the following civil penalties to be included in the AIC: (PAGA Compl. ¶¶ 64(v))

        (a)    civil penalties under section 226.3 of $250 for the first pay period violation, and $1,000 for all subsequent pay period violations.[11]

48.    Thus, as explained in more detail in the declaration submitted by Defendant's data analyst, Plaintiff's wage statement claim places an AIC of **$22,250**. (Kanthappan Decl. ¶14.).

### 5. **Plaintiff's section 204 claim places an amount in controversy of at least $16,593.15.**

49.    Plaintiff alleges that Defendant failed to pay her wages on a timely basis, in violation of section 204. (PAGA Compl. ¶¶ 32, 58, 59, 64, 64(iii)).

50.    Plaintiff also alleges that KeyBank "had a common policy and practice of systemically failing to pay Aggrieved Employees proper wages and overtime for all hours worked …" (PAGA Compl. ¶¶ 12, 13, 38, 39, 45). These allegations support a 100% violation rate for the 204 claim.

---

[9] $100 (1 pay period) + $200 (22 pay periods) = $4,500.
[10] $50 (1 pay period) + $100 (22 pay periods) = $2,250.
[11] $250 (1 pay period) + $1,000 (22 pay periods) = $22,250.

51. Labor Code section 204 provides that "[a]ll wages earned by any person in any employment are due and payable twice during each calendar month, on days designated in advance by the employer as the regular paydays." (*Id.,* § 204(a).) In other words, Section 204 is concerned with the frequency and timing of wage payments; **not disputes regarding how much an employee is entitled to be paid.** (*Hadjavi v. CVS Pharm., Inc.* (C.D.Cal. Sept. 22, 2010), No. CV 10-04886 SJO (RCx), 2010 WL 7695383, at *2 [Section 204 "deals solely with the timing of wages and not whether these wages were paid"].) The Court of Appeal has confirmed that "[t]he sole purpose of [Section 204] is to require an employer ... to maintain two regular pay days each month, within the dates required in that section." (*See See's Candy Shops, Inc. v. Superior Court* (2012) 210 Cal.App.4th 889, 904-905.) "Despite section 204's use of the word 'wages,' section 204 does not provide for the payment of any wages nor create any substantive right to wages. The only right furthered by the section is the timely payment of wages." (*Id.* (internal citation omitted).)

52. Thus, section 204 "does not address whether an employer paid the correct amount of wages." *Fuentes v. Maxim Healthcare Servs., Inc.*, 2018 WL 6137619, at *6 (C.D. Cal. Aug. 9, 2018); *see also De La Torre v. Am. Red Cross*, 2013 WL 5573101, at *5 (C.D. Cal. Oct. 9, 2013) ("Section 204(a) deals solely with the timing of wages and not with whether the correct wages were paid."). As such, Plaintiff's 204 allegation must be that Plaintiff's *entire paycheck* was late.

53. For this claim, Plaintiff's allegations require the following civil penalties to be included in the AIC: (PAGA Compl. ¶¶ 64(iii)):

(a) civil penalties under section 210 of $100 for the first pay period violation, and $200 for subsequent pay period violations, plus 25% of the amount withheld.[12]

54. Thus, as explained in more detail in the declaration submitted by Defendant's data analyst, Plaintiff's section 204 claim places an AIC of **$16,593.** (Kanthappan Decl. ¶15.).

---

[12] $100 (1 pay period) + $200 (22 pay periods) + $12,093.15 (which is 25% of the amount withheld from the 22 pay checks) = $16,593.15.

12

DEFENDANT'S NOTICE OF REMOVAL OF COMPLAINT TO FEDERAL COURT

**6.   Plaintiff's section 223 claim places an amount in controversy of at least $16,593.**

55.   Plaintiff alleges that Defendant failed to pay her wages in violation of section 223. (PAGA Compl. ¶¶ 33, 59, 64(iv)).

56.   Plaintiff also alleges that KeyBank "had a common policy and practice of systemically failing to pay Aggrieved Employees proper wages and overtime for all hours worked …" (PAGA Compl. ¶¶ 12, 13, 38, 39, 45). These allegations support a 100% violation rate for the 223 claim.

57.   For this claim, Plaintiff's allegations require the following civil penalties to be included in the AIC: (PAGA Compl. ¶¶ 64(iv)):

(a)   civil penalties under section 225.5 of $100 for the first pay period violation, and $200 for subsequent pay period violations, plus 25% of the amount withheld.[13]

58.   Thus, as explained in more detail in the declaration submitted by Defendant's data analyst, Plaintiff's section 223 claim places an AIC of **$16,593.** (Kanthappan Decl. ¶16.).

**7.   Plaintiff's section 2802 claim places an amount in controversy of at least $4,500.**

59.   Plaintiff alleges that Defendant "never reimbursed" Plaintiff for regular business expenses incurred. (PAGA Compl. ¶¶ 1, 22, 48-51, 64(i)). These allegations support a 100% violation rate for the 2802 claim.

60.   For this claim, Plaintiff's allegations require the following civil penalties to be included in the AIC: (PAGA Compl. ¶¶ 64(i)):

(a)   default civil penalties under section 2699(f) of $100 for the first pay period violation, and $200 for subsequent pay period violations.[14]

61.   Thus, as explained in more detail in the declaration submitted by Defendant's data analyst, Plaintiff's section 2802 claim places an AIC of **$4,500**. (Kanthappan Decl. ¶17.).

---

[13] $100 (1 pay period) + $200 (22 pay periods) + $12,093.15 (which is 25% of the amount withheld from the 22 paychecks) = $16,593.15.

[14] $100 (1 pay period) + $200 (22 pay periods) = $4,500.

**8.    Plaintiff's section 203 claim places an amount in controversy of at least $5,166.24.**

62.  Plaintiff alleges that she is a former employee of KeyBank, that she was willfully not paid her final wages, and that she seeks civil penalties under section 265. (PAGA Compl. ¶¶ 1, 53-57, 64(ii)).

63.  For this claim, Plaintiff's allegations require the following civil penalties to be included in the AIC: (PAGA Compl. ¶¶ 64(ii)):

(a)    30 days of Plaintiff's wages.[15]

64.  Thus, as explained in more detail in the declaration submitted by Defendant's data analyst, Plaintiff's section 2802 claim places an AIC of **$5,166.24**. (Kanthappan Decl. ¶18.).

**9.    Plaintiff's section 1174 claim places an amount in controversy of at least $4,500.**

65.  Plaintiff alleges that KeyBank failed to maintain accurate records of hours worked and wages paid, in violation of section 1174, and these seeks related default penalties. (PAGA Compl. ¶¶ 58, 59, 64(1)).

66.  For this claim, Plaintiff's allegations require the following civil penalties to be included in the AIC: (PAGA Compl. ¶¶ 64(i)):

(a)    default civil penalties under section 2699(f) of $100 for the first pay period violation, and $200 for subsequent pay period violations[16]

67.  Thus, as explained in more detail in the declaration submitted by Defendant's data analyst, Plaintiff's section 1174 claim places an AIC of **$4,500.** (Kanthappan Decl. ¶19.).

**10.    Plaintiff's claim for attorneys' fees places an amount in controversy of at least $147,175.**

68.  Plaintiff also seeks to recover an unspecified amount of attorneys' fees. (PAGA Complaint ¶ 64 (viii)). The Ninth Circuit held that where an award of attorneys' fees is authorized by statute, a court "must" recognize these fees in the amount in controversy. *See, e.g., Fritsch v.*

---

[15] 7.328 hours (average shift length) (x) $23.5 (average hourly rate) (x) 30 days = $5,166.24.

[16] $100 (1 pay period) + $200 (22 pay periods) = $4,500.

14
DEFENDANT'S NOTICE OF REMOVAL OF COMPLAINT TO FEDERAL COURT

*Swift Transportation Co. of Arizona, LLC,* 899 F.3d 785, 794 (9th Cir. 2018) ("Because the law entitles [the plaintiff] to an award of attorneys' fees if he is successful, such future attorneys' fees are at stake in the litigation, and must be included in the amount in controversy.").

69. The amount of attorneys' fees placed in controversy is the total amount of fees that will likely accrue during the course of litigation. *Lippold v. Godiva Chocolatier, Inc.,* No. C 10–00421, 2010 WL 1526441, at *3–4 (N.D. Cal. Apr. 15, 2010) ("a reasonable estimate of attorneys' fees likely to be expended" should be included in calculating the amount in controversy); *Swans v. Fieldworks, LLC,* No. 222CV07250SPGMRW, 2023 WL 196918, at *2–3 (C.D. Cal. Jan. 17, 2023) ("Defendant has proved beyond a preponderance of evidence that the amount in controversy exceeds $75,000 based on approximately $20,000 in damages and $60,000 in attorneys' fees.").

70. Attorneys' fees in wage and hour cases asserting ***individual claims*** often exceed $100,000. *See, e.g., Martin v. The Old Turner Inn,* 2003 WL 22998402 (Cal. Sup. 2003) (awarding $147,610 in attorneys' fees and costs in a single plaintiff wage and hour case in which the plaintiff recovered $49,508 in damages); *Cappuccio v. Pepperdine University,* Case. No. 13- cv-3125-DSF-AJWx, 2014 WL 12573366, at *5-6 (C.D. Cal. Sept. 29, 2014) (awarding $102,153.75 in attorneys' fees and costs in a single plaintiff case for violations of the Fair Labor Standards Act in which plaintiff recovered $120,000 in economic damages).

71. Also, courts have recognized that "an attorney handling an ***individual*** wage-and-hour case '***typically spends far more than 100 hours on the case***'." *Swans,* 2023 WL 196918, at *3 (quoting Hernandez, 2020 WL 5496172, at *5)(emphasis added); *see also Lippold,* 2010 WL 1526441, at *4 (asserting that a "typical individual wage and hour case" can generate fees in excess of $100,000 when using a $400 per hour rate for attorneys' fees to meet the amount in controversy); *Hernandez v. Aramark Food & Support Servs. Grp., Inc.,* No. 20-CV-03633-EJD, 2020 WL 5496172, at *5 (N.D. Cal. Sept. 11, 2020) (same); *Sasso v. Noble Utah Long Beach, LLC,* No. CV 14-09154-AB (AJWx), 2015 WL 898468, at *6 (C.D. Cal. Mar. 3, 2015) ("Recent estimates for the number of hours expended through trial for employment cases in this district have ***ranged from 100 to 300 hours***.")(emphasis added); *Betancourt v. OS Restaurant Servs., LLC*, 83 Cal. App. 5th 132, 134-39 (2022) (claiming over 800 hours and $580,000 in fees and ultimately

awarded $280,000 in fees for meal and rest break, waiting time penalty, and wage statement penalty claims where the plaintiff only recovered $15,375);

72. More recently, the court in *Baker v. Tech Data Corp.* held "an estimate of 200 hours through trial is conservative and appropriate" in an **individual wage and hour case** at $500.00 per hour. Case No. 5:21-cv-02096-JWH, 2022 WL 1080944, at *2 (C.D. Cal. Apr. 11, 2022)

73. Pursuant to the recent decisions issued by the United States Supreme Court and the California Supreme Court, the Plaintiff has brought both **an individual PAGA claim** and a collective action. *Viking River Cruises, Inc v. Moriana,* 596 U.S. 639, 662 (2022); *Adolph v Uber Technologies, Inc.*, 14 Cal. 5th 1104, 1119-23 (2023). As such, the number of hours expended through trial for Plaintiff's **individual PAGA claims** are properly considered in the AIC.

74. Here, Plaintiffs' counsel David Yeremian submitted a declaration in connection with a motion for an attorneys fee award in a recent wage and hour matter, *NATASHA R. VALENZUELA, an individual, on behalf of herself and others similarly situated, Plaintiff, vs. NETWORK MEDICAL MANAGEMENT, INC., a California corporation; and DOES 1 through 50, inclusive, Defendants* (LA Superior Court Case No. 21STCV39548). (Theofanis Decl. ¶5 Ex. D [Yeremian Decl.].)  Mr. Yeremian's declaration states his billable rate as of the date of the declaration, February 28, 2023 was $725 per hour since 2021.

75. Here, 100 hours at an billable rate of $725 per hour is a conservative estimate. Mr. Yeremian is listed as one of the lead counsel in this case and has previously attested to his hourly rate being $725 per hour in another wage and hour matter in 2023.  KeyBank expects Plaintiff's counsel will spend far in excess of 100 hours on this matter given anticipated pre-discovery litigation, including conferences on various responsive motions, stipulations on briefing schedules regarding the same, and briefing various responsive motions. (Theofanis Decl. ¶6.)

76. Although Plaintiff has signed an arbitration agreement, Plaintiff has opposed its enforcement in the class action by alleging that KeyBank had not sufficiently validated her electronic signature. (ECF 27, pp. 3-6).

///

///

77. KeyBank conservatively estimates that Plaintiff's counsel has spent and will spend time on the following case-related items, if litigated through an arbitration proceeding and/or trial, totaling at least ***203 billable hours of work***:

    (a)    conducting an initial fact investigation and drafting the LWDA Letter (10 hours);

    (b)    drafting the PAGA Complaint (5 hours);

    (c)    drafting the opposition to KeyBank's soon-to-be filed motion to compel arbitration and appearing at the hearing (20);

    (d)    preparing for and participating in the Rule 26(f) conference and drafting the Rule 26(f) report OR, in the alternative, pursuing the same / similar actions in arbitration (3 hours);

    (e)    reviewing case documents (5 hours);

    (f)    responding to written discovery (in litigation or arbitration) (10 hours);

    (g)    preparing for and defending Plaintiff's deposition and preparing for and taking multiple witness depositions (in litigation or arbitration) (50 hours);

    (h)    opposing a motion for summary judgment (in litigation or arbitration) (30 hours);

    (i)    work on pre-trial / hearing related submissions, including pre-trial conference, memorandum of contentions of fact and law, witness lists, exhibits lists, final pre-trial conference order, etc. (in litigation or arbitration) (30 hours);

    (j)    2-day trial and post-trial motions (40 hours) (in litigation or arbitration).

Thus, very conservatively assuming 203 hours of work on this matter, and conservatively using Plaintiff's billable rate from last year at $725/hour, Plaintiff's request for attorney's fees conservatively places **$147,175** in controversy for attorney fees alone.

**11.**     **Summary of Amount in Controversy**

78. As set forth above, and while KeyBank denies that Plaintiff is entitled to recover any such amounts, the allegations in the Complaint satisfy the requisite $75,000 amount in controversy for purposes of removal under 28 U.S.C. Sections 1332, 1441(a) and 1446:

| Claims seeking civil penalties | AIC |
|---|---|
| Minimum Wages | $10,100 |
| Overtime Wages | $6,750 |
| Meal and Rest Break | $6,750 |

| Claims seeking civil penalties | AIC |
|---|---|
| Wage Statement | $22,250 |
| Section 204 | $16,593.15 |
| Section 223 | $16,593.15 |
| Section 2802 | $4,500 |
| Section 203 | $5,166.24 |
| Section 1174 | $4,500 |
| SUBTOTAL | $93,202.54[17] |
| **Attorneys' Fees** | $147,175 |
| TOTAL | **$240,377.54** |

## IV. VENUE

79. Venue lies in this Court because Plaintiff's action is pending in this district and division. See 28 U.S.C. § 1441(a). Under United States Code, Title 28, Section 1441(a), this case may properly be removed to the Northern District of California because Plaintiff filed this case in the Superior Court of California, County of Contra Costa. Additionally, KeyBank is informed and believes that the events allegedly giving rise to this action occurred within this judicial district.

## V. SATISFACTION OF REQUIREMENTS OF 28 U.S.C. § 1446

80. In accordance with United States Code, Title 28, Section 1446(a), Exhibits A-E to the Declaration of George J. Theofanis constitute a copy of all processes, pleadings, and orders either served upon or by KeyBank. As required by United States Code, Title 28, Section 1446(b), the Notice of Removal was filed within 30 days after KeyBank was served with Plaintiff's Complaint. As required by United States Code, Title 28, Section 1446(d), KeyBank will provide notice of this removal to Plaintiff through her attorneys of record and a copy of this Notice of Removal will be filed with the Superior Court of the State of California for the County of Contra Costa.

## VI. CONCLUSION

81. Because this civil action is between citizens of different States and the matter in controversy exceeds $75,000, exclusive of interest and costs, KeyBank respectfully requests that this Court exercise its removal jurisdiction over this action.

---

[17] (Kanthappan Decl. ¶20.).

82. In the event this Court has a question regarding the propriety of this Notice, KeyBank requests the Court set an evidentiary hearing so that it may have an opportunity to more fully brief the Court on the basis for this removal.

WHEREFORE, KeyBank removes this action to this Court.

DATED: August 26, 2024

OGLETREE, DEAKINS, NASH, SMOAK & STEWART, P.C.

By: /s/ George J. Theofanis
Michael J. Nader
George J. Theofanis

Attorneys for Defendant KEYBANK NATIONAL ASSOCIATION